UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| | * | |
| BOSTON CARRIAGE, INC., d/b/a | * | |
| LOGAN CAR SERVICE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:21-cv-10688-IT |
| | * | |
| BOSTON SUBURBAN COACH, INC., | * | |
| SVITLANA KRAYNITSKAYA, YULIA | * | |
| BREZHNEVA, DMITRY KRAYNITSKY, | * | |
| and VITALIY POPOVICH, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM AND ORDER
September 30, 2022

TALWANI, D.J.

Plaintiff Boston Carriage, Inc. ("Boston Carriage"), a limousine service business doing
business as Logan Car Service, alleges that Defendants Boston Suburban Coach, Inc. ("Boston
Suburban") and Svitlana Kraynitskaya, Yulia Brezhneva, Dmitry Kraynitsky, and Vitaliy
Popovich (collectively, the "Individual Defendants") infringed upon Boston Carriage's copyright
and trademarks and engaged in other wrongful actions. First Am. and Supplemental Complaint
("Am. Compl.") ¶¶ 112-253 [Doc. No. 38]. Now pending before the court is Defendants' Motion
to Dismiss [Doc. No. 40]. For the reasons below, Defendants' Motion [Doc. No. 40] is granted in
part and denied in part.

## I.   Factual Allegations as Set Forth in the Amended Complaint

Boston Carriage, d/b/a Logan Car Service, is a Massachusetts corporation that provides
limousine and transportation services primarily in the Greater Boston area, and to and from
Rhode Island, New Hampshire, and other states. Am. Compl. ¶¶ 17, 31 [Doc. No. 38]. Boston

Carriage and its predecessor business partnership have operated under the trade name "Logan Car Service" since the 2000s. Id. at ¶¶ 18-20. In 2003, Boston Carriage registered a domain name, "logancarservice.com," and over the following years developed a website using that domain name to promote and operate its business. Id. at ¶¶ 21-22. Beginning in approximately 2005, Boston Carriage advertised its transportation services to customers, including through its website, using the trade name "Logan Car Service." Id. at ¶¶ 29-30. Since at least 2016, Boston Carriage placed copyright notice on the homepage of its website. Id. at ¶ 26. Boston Carriage alleges that it has developed substantial recognition and goodwill using its "Logan Car Service" trademark, which Boston Carriage has used for years in its advertising campaigns, efforts to build brand name recognition, and sales. Id. at ¶ 32.

Boston Suburban is a private Massachusetts company that offers similar transportation services and is a competitor of Boston Carriage in the same geographical area. Id. at ¶ 36. Nominally, Ms. Kraynitskaya is Boston Suburban's President, Secretary, and a Director, id. at ¶¶ 4, 6, 38, and Ms. Brezhneva is Boston Suburban's Treasurer and a Director, id. at ¶¶ 5, 38. However, neither personally engages in the management and operation of the business. Id. at ¶ 52. Instead, Boston Suburban is actually controlled by Ms. Kraynitskaya's husband, Mr. Kraynitsky, and Ms. Brezhneva's husband, Mr. Popovich, who maintain operational and managerial power. Id. at ¶¶ 8, 10, 39. Boston Suburban's registered place of business is Mr. Kraynitsky and Ms. Kraynitskaya's home address. Id. ¶ 63.

For several years, Boston Carriage and Boston Suburban maintained an ongoing business relationship in which both companies outsourced clients to each other and engaged in regular communications regarding their business operations. Id. at ¶¶ 41-43. Specifically, Mr. Kraynitsky (primarily) and Mr. Popovich (less regularly) communicated with Boston Carriage's

principals regarding both companies' business operations. Id. at ¶ 42. At minimum once a week between 2011 or 2012 and 2018, Mr. Kraynitsky and Mr. Popovich called Boston Carriage's principals to discuss business operations and to seek advice on how to develop their own company. Id. at ¶ 43. Boston Carriage's principals voluntarily shared their business knowledge with Boston Suburban, including Boston Carriage's business and marketing strategies and its online presence. Id. at ¶¶ 44-47. Additionally, Boston Carriage's principals guided the Individual Defendants in setting up their business and, in a conversation between Boston Carriage's principals and Mr. Kraynitsky that occurred in or around 2017, Boston Carriage's principals told Mr. Kraynitsky that Boston Carriage's business was benefitting from using paid advertisements on Google to promote its website. Id. at ¶¶ 45-48. Mr. Kraynitsky replied that Boston Suburban would not pay for Google advertisement or other online advertisement services because Mr. Popovich would be managing Boston Suburban's online advertising himself. Id. at ¶ 48. Through these numerous interactions, the Individual Defendants became aware of Boston Carriage's use of the "Logan Car Service" service mark. Id. at ¶¶ 49-50.

On December 18, 2017, Boston Suburban registered the domain name "logan-car-service.com." Id. at ¶ 63. Boston Suburban listed Mr. Popovich as the registrant, administrative contact, and technical contact. Id. Each page of Boston Suburban's website included "Copyright © Logan-car-service.com." Id. at ¶ 67. Boston Suburban's website shared similarities with Boston Carriage's website, including a similar color scheme, page layout and website architecture, font type, and artwork and photographs. Id. at ¶ 66. Additionally, several of the pages on Boston Suburban's website contained text, client reviews, and other content that matched, almost verbatim, the content that originally appeared on Boston Carriage's website. Id. at ¶¶ 72-84; Am. Compl. Exs. 6-7 [Docs. Nos. 38-6, 7].

In January through April of 2018, Boston Carriage experienced an unexpected decrease in sales. Am. Compl. ¶ 57 [Doc. No. 38]. To increase sales, Boston Carriage took out a business loan to finance additional advertising. Id. at ¶ 60. On April 26, 2018, Boston Carriage discovered Boston Suburban's website under the "logan-car-service.com" domain when one of Boston Carriage's returning clients informed Boston Carriage that when she searched for "Logan Car Service" on Google, she came across Boston Suburban's website called "Logan Car Service," which to her, looked similar to Boston Carriage's website. Id. at ¶¶ 61-62. Because the client felt there was "something wrong" with Boston Suburban's website, she called in her reservation with Boston Carriage directly instead of booking it online. Id. at ¶ 61.

On or around April 30, 2018, Boston Carriage sent a cease-and-desist letter demanding that Boston Suburban cease the use of its "logan-car-service.com" website. Id. at ¶ 99; Am. Compl. Ex. 8 [Doc. No. 38-8]. Shortly thereafter, Mr. Kraynitsky called Boston Carriage, admitted that the challenged domain name and website belonged to Boston Suburban and was created by Mr. Kraynitsky and Mr. Popovich, and "tried to apologize, proffering as an excuse that [Boston Suburban] had hired a third-party web designer from Ukraine to design that website and [Boston Suburban was] unaware that [the web designer] had illegally copied content from [Boston Carriage's] website." Am. Compl. ¶ 100 [Doc. No. 38]. On or around May 4, 2018, Boston Carriage received a written response from Boston Suburban, informing Boston Carriage that the website in question was taken down and not operational as of May 1, 2018. Id. at ¶ 102; Am. Compl Ex. 9 [Doc. No. 38-9]. Although Boston Suburban removed its website from the "logan-car-service.com" domain address, for several months visitors to the "logan-car-service.com" domain address were automatically rerouted to Boston Suburban's other website, "bostonsuburbancoach.com." Am. Compl. ¶¶ 103, 110.

On May 7, 2018, Boston Carriage registered the marks "LoganCarService" and "Logan-Car-Service" under the Massachusetts Statute for Registration and Protection of Trademarks, M.G.L. c. 110H. Id. at ¶ 33; Am. Compl. Ex. 3 [Doc. No. 38-3].

At some point thereafter, Boston Carriage discovered that Boston Suburban had been using and continued to use the "Logan Car Service" mark in online keyword advertising and in metatags. Id. at ¶ 108. Boston Suburban also continued to copy customer reviews from Boston Carriage's website and publish them on online review platforms. Id. at ¶ 109. Although Boston Suburban temporarily paused its use of the logan-car-service.com domain name and the automatic rerouting of visitors to Boston Suburban's main website a few months after receiving Boston Carriage's April 2018 cease-and-desist letter, Boston Suburban resumed promoting and advertising the domain name "logan-car-service.com" for an unknown period of time thereafter. Id. at ¶¶ 110-11. As of late 2020, an operational website where customers could make online reservations with Boston Suburban could be found at the logan-car-service.com domain name. Id. at ¶ 111. Boston Suburban also resumed re-routing visitors to its own website. Id.

On April 23, 2021, Boston Carriage submitted a trademark registration application for the "Logan Car Service" mark with the United States Patent and Trademark Office. Am. Compl. ¶ 33 [Doc. No. 38]; Am. Compl. Ex. 5 [Doc. No. 38-5]. On July 6, 2021, Boston Carriage registered the trademark "Logan Car Service" in Massachusetts. Am. Compl. ¶ 34 [Doc. No. 38]; Am. Compl. Ex. 4 [Doc. No. 38-4].

On April 23, 2021, Boston Carriage submitted a copyright registration to the U.S. Copyright Office. Am. Compl. ¶ 27 [Doc. No. 38]; Am. Compl. Ex. 1 [Doc. No. 38-1].  On September 14, 2021, the U.S. Copyright Office issued a certificate of copyright registration,

effective retroactively to April 23, 2021, to Boston Carriage. Am. Compl. ¶ 28 [Doc. No. 38];

Am. Compl. Ex. 2 [Doc. No. 38-2].

## II.    Legal Standard

In evaluating a motion to dismiss for failure to state a claim under Federal Rule of Civil

Procedure 12(b)(6), the court assumes "the truth of all well-pleaded facts" and draws "all

reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir.

2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim

to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations . . . . [f]actual allegations must be enough to raise a right to relief above the

speculative level . . . ." Id. at 545 (internal citations omitted). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678

(2009). Moreover, "an adequate complaint must include not only a plausible claim but also a

plausible defendant." See Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592, 594 (1st Cir. 2011).

Where a plaintiff alleges fraud, either as independent claims or as predicates to a RICO

offense, they must meet the heightened pleading standards of Fed. R. Civ. P. 9(b). See N. Am.

Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 15 (1st Cir. 2009) (holding

that the particularity requirement applies not only to actual fraud claims but also to "associated

claims where the core allegations effectively charge fraud"). By its terms, Rule 9(b) directs that

"a party must state with particularity the circumstances constituting fraud or mistake." The First

Circuit has interpreted this to require that beyond pleading "the false statements and by whom

they were made," plaintiffs must also identify "the basis for inferring scienter." Cardinale, 567

F.3d at 13. In application, this renders a "general averment of the defendant's 'knowledge' of material falsity" insufficient. Id. (quoting Greenstone v. Cambex Corp., 975 F.2d 22, 25 (1st Cir. 1992), superseded by statute on other grounds, Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737). Instead, plaintiffs must put forth "specific facts that make it reasonable to believe that defendant knew that a statement was materially false or misleading." Id.

### III.    Discussion

Boston Carriage alleges, inter alia, that Defendants violated various state and federal laws, including copyright infringement, trademark infringement under federal and state law, violation of the Anticybersquatting Consumer Protection Act ("ACPA"), unfair competition and unfair business practices under federal and state law, interference with advantageous business relations, conversion, civil conspiracy, and unjust enrichment. Boston Carriage also alleges that the Individual Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Defendants move to dismiss each count for failure to state a claim. The court addresses in turn: each count (other than the conspiracy charge) against Boston Suburban; the alleged liability of the Individual Defendants for these same claims; the conspiracy claim; and finally, the RICO count.

### A. *Counts Against Boston Suburban*

#### 1.    Copyright Infringement (Count I)

Boston Carriage alleges that Boston Suburban copied Boston Carriage's original content to use on a "copycat" website between December 2017 and April 2018 in violation of 17 U.S.C. § 101 *et seq*. Am. Compl. ¶ 117 [Doc. No. 38]. Boston Carriage claims that it was the sole owner to both the website and the original written content appearing on the website, and even placed a

copyright notice on the website in 2016. <u>Id.</u> at ¶¶ 113, 116. Boston Suburban contends that any Copyright Act claim is barred because Boston Carriage did not register its copyright prior to filing the complaint.

As a threshold matter, valid copyright preregistration or registration is a prerequisite to the filing of a civil claim based on that copyright. 17 U.S.C. § 411(a) ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."). "Although this registration requirement does not circumscribe a federal court's subject-matter jurisdiction, the Supreme Court has described it as 'a precondition to filing a claim.'" <u>Alicea v. Machete Music</u>, 744 F.3d 773, 778 (1st Cir. 2014) (quoting <u>Reed Elsevier, Inc. v. Muchnick</u>, 559 U.S. 154, 157 (2010)). The Court in <u>Fourth Estate Public Benefit Corporation. v. Wall-Street.com, LLC</u>, 139 S. Ct. 881, 888 (2019), made clear that the registration requirement is satisfied when the Copyright Office issues the certificate of registration.

Under Federal Rule of Civil Procedure 15(d), however, the court may "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Such supplemental pleading is "encouraged 'when doing so will promote the economic and speedy disposition of the entire controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any of the other parties to the action.'" <u>U.S. ex rel. Gadbois v. PharMerica Corp.</u>, 809 F.3d 1, 4 (1st Cir. 2015) (quoting 6A Wright et al., Federal Practice and Procedure § 1504, at 258–59). In <u>Cortes-Ramos v. Martin-Morales</u>, 956 F.3d 36, 43 (1st Cir. 2020), the First Circuit concluded that the lower court dismissal of a suit based solely on registration grounds should have been "without prejudice" so that "the plaintiff may be able to satisfy the requirement in the

future." The First Circuit noted further that a situation in which an initial complaint contains an insufficient registration "appears to be a candidate for a Rule 15(d) supplement." <u>Id.</u> at. 44.[1]

There is no dispute that on April 26, 2021, when the initial <u>Complaint</u> [Doc. No. 1] was filed, Boston Carriage did not meet the registration requirement. On September 14, 2021, the U.S. Copyright Office issued its certificate of registration, identifying Boston Carriage as the copyright owner of the original written content on the website with an effective date of April 23, 2021. Am. Compl. ¶ 28 [Doc. No. 38]; Am. Compl. Ex. 2 [Doc. No. 38-2]. On October 8, 2021, Boston Carriage filed its <u>Motion for Leave to File First Amended and Supplemental Complaint</u> [Doc. No. 29], which the court granted on January 6, 2022, as a matter of judicial efficiency. <u>See</u> Elec. Order [Doc. No. 37]. Boston Carriage filed its <u>First Amended and Supplemental Complaint</u> [Doc. No. 38] on January 12, 2022.

Unlike in <u>Cortes-Ramos,</u> where the effective date of registration was nearly a year after the complaint was filed, <u>see</u> 2020 WL 4920045 at *4 (D.P.R. Aug. 21, 2020), the effective date of registration here is prior to the filing of the initial complaint. Boston Carriage moved promptly thereafter in filing its motion for leave to amend. The court allowed amendment, finding that "[w]here there is no argument that the motion to amend is untimely and the court has not yet addressed Defendants' pending <u>Motions to Dismiss</u> [18, 20], judicial efficiency counsels in favor of allowing the filing of the proposed First Amended and Supplemental Complaint amendment." Elec. Order [Doc. No. 37]. In these circumstances, where the effective registration date precedes the original complaint and Boston Carriage moved promptly in seeking leave to supplement the complaint, the court finds that the Rule 15(d) supplemental pleading satisfies the registration

---

[1] The First Circuit found, however, that whether an amended pleading should be permitted lies in the first instance with the district court. <u>Cortes-Ramos</u>, 956 F.3d at 44. The district court denied the post-remand request for leave to amend. <u>Cortes-</u>Ramos, 2020 WL 4920045 at *4.

requirement.

"To establish copyright infringement, the plaintiff must prove two elements: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" Latin Am. Music Co. Inc. v. Media Power Grp., Inc., 705 F.3d 34, 38 (1st Cir. 2013) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). "A certificate of copyright constitutes prima facie evidence of ownership and originality of the work as a whole." Johnson v. Gordon, 409 F.3d 12, 17 (1st Cir. 2005). To qualify as an original work, the work must possess "at least some minimal degree of creativity." Feist, 499 U.S. at 345. However, "[t]hat originality requirement 'is not particularly stringent,' and the vast majority of works pass muster." Ophthalmic Rsch. Assocs., Inc. v. SARcode Corp., 2013 WL 2247584, at *2 (D. Mass. May 22, 2013) (quoting Feist, 499 U.S. at 358–59).

Boston Carriage's federal copyright registration [Doc. No. 38-2] constitutes prima facie evidence of both its ownership and originality of the written content on the website. Further, Boston Carriage has produced sufficient evidence comparing its own website with Boston Suburban's website, showing nearly identical portions on the "About Us," "Why Chose Logan Car Services/Why Us," "Car and Limo Fleet," "Corporate Service," and "Home" pages, among others. See Am. Compl. Exs. 6-7 [Docs. 38-6,7]; see Cortes-Ramos, 956 F.3d at 42 (holding that "the 'almost identical' allegation is sufficient to meet [plaintiff's] burdens of pleading both indirect actual copying and substantial similarity."). Accordingly, Boston Suburban's Motion to Dismiss [Doc. No. 40] is DENIED as to Count I.

    2.   Unfair Competition and False Advertising under the Lanham Act (Count II)

        *a.  Unfair Competition under the Lanham Act*

Boston Carriage alleges that Boston Suburban's use of the "Logan Car Service" mark

beginning in approximately December 2017 "created a substantial likelihood of confusion for the public" in interstate commerce which hurt Boston Carriage competitively. Am. Compl. ¶¶ 137-45 [Doc. No. 38]. Boston Suburban contends that Boston Carriage has not sufficiently pleaded that the mark acquired secondary meaning as to garner trademark protection. Mem. 5-9 [Doc. No. 41].

"To succeed on a claim of trademark infringement, a plaintiff must establish (1) that its mark is entitled to trademark protection, and (2) that the allegedly infringing use is likely to cause consumer confusion." Bos. Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 12 (1st Cir. 2008); see also Nationwide Payment Sols., LLC v. Plunkett, 2011 WL 446077, at *10 (D. Me. Feb. 3, 2011), report and recommendation adopted, 2011 WL 1045137 (D. Me. Mar. 16, 2011) (listing the same elements for both trademark infringement and unfair competition in violation of the Lanham Act). Under the Lanham Act, a trademark includes "any word, name, symbol, or device or any combination thereof" used by an individual or entity "to identify and distinguish his or her goods . . . from those manufactured or sold by others." 15 U.S.C. § 1127.

While an unfair competition claim may be based on registration, it does not need to be. Volkswagenwerk Aktiengesellschaft v. Wheeler, 814 F.2d 812, 815 (1st Cir. 1987) ("Trademark rights do not generally arise from registration."). Rather, "courts have often divided marks into the five categories set forth in Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4 (2d Cir. 1976): (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful." I.P. Lund Trading v. Kohler Co., 163 F.3d 27, 39 (1st Cir. 1998). Descriptive marks communicate the "ingredients, qualities or characteristics" of a good. Equine Techs., Inc. v. Equitechnology, Inc., 68 F.3d 542, 544 (1st Cir. 1995). Mere descriptive terms are not generally subject to trademark protection without a showing of "acquired distinctiveness" or "secondary meaning." Bos. Duck.

Tours, 531 F.3d at 13; see Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 116–

17 (1st Cir. 2006) ("A mark is, therefore, considered distinctive (and, thus, eligible for trademark

protection) if it either is inherently distinctive or exhibits acquired distinctiveness gained through

secondary meaning.").

At this stage, neither party suggests that the marks in dispute are anything but descriptive.

At issue is whether the marks are distinctive as acquired through a secondary meaning. "To

establish secondary meaning, a manufacturer must show that, in the minds of the public, the

primary significance of a product feature or term is to identify the source of the product rather

than the product itself." Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844, 851

n. 11 (1982). The court may examine several factors to establish secondary meaning, including

"the length or exclusivity of use of a mark, the size or prominence of [plaintiff's] enterprise[,] the

existence of substantial advertising by plaintiff…[,]an established place in the market, and

[p]roof of intentional copying." I.P. Lund Trading, 163 F.3d at 42 (internal citations and

quotations omitted); see President & Trustees of Colby College v. Colby College–New

Hampshire, 508 F.2d 804, 807–08 (1st Cir. 1975) (explaining how secondary meaning is

established); see also Boston Beer Co. Ltd. Partnership v. Slesar Bros. Brewing Co., 9 F.3d 175,

182 (1st Cir. 1993) (listing factors).

For example, the court found that a plaintiff sufficiently pleaded secondary meaning

when it alleged that it had acquired trust and goodwill with customers through twelve years of

use of a mark. Bos. Granite Exch., Inc. v. Greater Bos. Granite, LLC, 2012 WL 3776449, at *3

(D. Mass. Aug. 29, 2012). In addition, the plaintiff in Boston Granite alleged it was one of the

largest regional retailers of the product in question, had operated a website with a similar name

for over ten years, had registered the mark with the Commonwealth, and belonged to a national

association under the service mark. Id.

Although Boston Carriage did not register its mark with the Commonwealth until 2021, it has used the "Logan Car Service" mark and corresponding domain name for nearly 20 years. Am. Compl. ¶¶ 20-22, 30 [Doc. No. 38]. Boston Carriage has alleged that since approximately 2005, it has "extensively advertised" under the mark and invested "substantial time, money, and effort in building up the goodwill associated" with the mark. Id. at ¶ 128. It also alleges that its customers associate the mark with its services and use the mark to refer other customers to Boston Carriage. Id. at ¶¶ 128-30. Further, Boston Carriage alleges that, to its knowledge, until Boston Suburban's actions in December 2017, no other business in the region operated under the same tradename to promote its services. Id. at ¶ 131. Although "Logan Car Service" is, on its own, a "weak, descriptive term that deserves minimal protection," see Boston Duck Tours, 531 F.3d at 23, the continuous use of the name raises a plausible claim that the mark, and its corresponding domain name "logancarservice.com" have acquired secondary meaning over the course of nearly 20 years, and is thus a valid trademark entitled to protection. Further, Boston Carriage alleged that Boston Suburban's use of the mark confused one of Boston Carriage's clients, who was mistakenly sent to Boston Suburban's domain when looking for Boston Carriage's website. Am. Compl. ¶¶ 61-63 [Doc. No. 38]. Defendants do not argue that Boston Carriage has failed to plead that Defendants' conduct is likely to cause consumer confusion. See Mem. 5-9 [Doc. No. 41]. Thus, Boston Suburban's Motion to Dismiss [Doc. No. 40] is DENIED as to the Unfair Competition claim of Count II.

### b.  *False Advertising Under the Lanham Act*

Boston Suburban also claims that Boston Carriage does not sufficiently allege a false advertising claim under the Lanham Act because it does not state a false statement through Boston Suburban's use of the mark. Mem. 9 [Doc. No. 41]. To state a claim for false advertising,

a plaintiff must prove that "(1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products." Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave., 284 F.3d 302, 310–11 (1st Cir. 2002).

Boston Suburban contends that Boston Carriage has not pled any false or misleading statement beyond the use of the mark. Boston Carriage alleges, however, that Boston Suburban took customer reviews from Boston Carriage and assigned fictitious names to the customers when it copied the reviews onto the "copycat" website. Am. Compl. ¶¶ 83-84 [Doc. No. 38]; Am. Compl. Exs. 6-7 [Docs. Nos. 38-6, 7]. Boston Carriage contends that this alteration of the reviews was not just mere copying, but was a separate act intended to mislead customers that Boston Suburban, rather than Boston Carriage, had actually performed these services. Pl.'s Opp'n. 10-11 [Doc. No. 45]. Further, Boston Carriage alleges that Boston Suburban used Boston Carriage's service mark and similar domain name in advertising, which created a substantial likelihood of deceiving the public. Am. Compl. ¶ 139 [Doc. No. 38]. Thus, Boston Suburban's Motion to Dismiss [Doc. No. 40] is DENIED as to Count II's false advertising claim under the Lanham Act.

3. Violation of Anti-cybersquatting Consumer Protection Act (Count III)

To state a claim under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), a plaintiff must allege the following: "(1) it has a valid trademark entitled to

14

protection; (2) its mark is distinctive or famous; (3) the defendant's domain name is identical or confusingly similar to, or in the case of famous marks, dilutive of, the owner's mark; and (4) the defendant used, registered, or trafficked in the domain name (5) with a bad faith intent to profit." Nationwide Payment Solutions, LLC v. Plunkett, 697 F.Supp.2d 165, 172 (D. Me. 2010) (citing DaimlerChrysler v. Net Inc., 388 F.3d 201, 204 (6th Cir. 2004)).

The court has already discussed the validity of the mark, the distinctiveness of the mark, and the customer confusion prongs, and does not repeat them here. See Section III(A)(2)(a). Boston Carriage alleges that it hosted its website at the domain "logancarservice.com" since 2003. Am. Compl.  ¶¶ 21-22 [Doc. No. 38]. Boston Carriage states that in or about December 2017, Boston Suburban registered a nearly identical domain name—"logan-car-service.com" — to advertise and collect business. Id. at ¶¶ 148-49. The domain was allegedly registered using Boston Suburban's registered place of business and email address with Mr. Popovich listed as the registrant. Id. at ¶ 63. Further, in approximately April 2018, Mr. Kraynitsky admitted that the domain belonged to Boston Suburban. Id. at ¶ 100.

Boston Carriage has also sufficiently pleaded that Boston Suburban used the similar domain name with an alleged bad faith intent to profit. Boston Suburban's website allowed potential customers to make reservations directly, and Boston Carriage has claimed that from January 2018 and April 2018, a "substantial volume" of its consumer base was diverted to Boston Suburban. Id. at ¶ 98. However, before the creation of Boston Suburban's website in December 2017, Boston Carriage had been performing substantially better than Boston Suburban between 2011 and 2018. Id. at ¶ 46. Boston Carriage has thus sufficiently pleaded that Boston Suburban created the domain "logan-car-service.com" to divert customers away from Boston Carriage for corporate profit. While Boston Suburban may disagree with the allegations of bad

faith based on its interpretation of the facts, such contentions are not proper at the motion to dismiss stage. See IvyMedia Corp. v. Take Tour, Inc., 2013 WL 5290551, at *11 (D. Mass. July 9, 2013). As such, Boston Suburban's Motion to Dismiss [Doc. No. 40] is DENIED as to Count III.

> 4. Trademark Infringement Under Massachusetts Trademark Protection Statute, M.G.L. c. 110H § 12 (Count V)

Massachusetts General Law chapter 110H § 12(i) prohibits, in relevant part, the "use, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of a mark registered under this chapter in connection with the sale, distribution, offering for sale, or advertising of any goods or services on or in connection with which the use is likely to cause confusion or mistake or to deceive as to the source of origin of such goods or services." The standards for trademark infringement under this statute are "nearly identical" to those under the Lanham Act. Umuoji Improvement Union (N. Am.), Inc. v. Umuoji Improvement Union (N. Am.), Inc., 537 F. Supp. 3d 79, 85 (D. Mass. 2021) (holding that "[n]early identical standards apply to trademark infringement claims brought under Mass. Gen. Laws ch. 110H, § 12" as compared to Lanham Act claims).

Boston Carriage registered the marks "Logan-Car-Service" and "LoganCarService" in Massachusetts on May 7, 2018. Am. Compl. Ex. 3 [Doc. No. 38-3]. On July 6, 2021, it registered the mark "Logan Car Service" in Massachusetts. Am. Compl. Ex. 4 [Doc. No. 38-4]. Boston Carriage has sufficiently alleged that the "Logan Car Service" mark is a colorable imitation of the 2018 registered marks, see 15 U.S.C. § 1127 (defining a colorable imitation as "any mark which so resembles a registered mark as to be likely to cause confusion or mistake or to deceive"), affording Boston Carriage trademark protection for all three marks, and colorable imitations thereof, under Massachusetts law beginning on May 7, 2018. See e.g., Monteiro Elec.,

Inc. v. Monteiro Indus. Elec., Inc., 2008 WL 4926496 at *3-4 (Mass. Super. Oct. 17, 2008) (holding that a logo differentiated by a single word in small letters was a colorable imitation of a registered mark).

Thus, Boston Suburban's Motion to Dismiss [Doc. No. 40] as to Count V is GRANTED as to claims that alleged occurred before May 7, 2018, and is otherwise DENIED.

     5.   Trademark Dilution under Massachusetts Trademark Protection Statute, M.G.L. c. 110H § 13 (Count VI)

Boston Carriage alleges that Boston Suburban's use of its trade name and service marks dilutes the goodwill and sales associated with such marks. Am. Compl. ¶ 205 [Doc. No. 38]. Boston Suburban contends that any trademark dilution claim is barred because the service marks in question were not registered before such claims arose. Mem. 9 [Doc. No. 41].

Under Massachusetts law, "[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter, or a mark valid at common law, or a trade name valid at common law, shall be a ground for injunctive relief…."  M.G.L. c.110H § 13. "The Massachusetts statute prohibiting dilution . . . require[es] a plaintiff to prove '(1) that its mark is distinctive, and (2) that the defendant's use of a similar mark has created a likelihood of dilution.'" Scholz v. Goudreau, 132 F. Supp. 3d 239, 253 (D. Mass. 2015), aff'd, 901 F.3d 37 (1st Cir. 2018) (quoting Astra Pharm. Prod., Inc. v. Beckman Instruments, Inc., 718 F.2d 1201, 1209 (1st Cir. 1983)). "Under state law, a likelihood of dilution can result from any one of three situations: (1) reduction of the value of the mark caused by actual or potential confusion; (2) injury resulting from a use of the mark that tarnishes the reputation associated with the plaintiff's mark; or (3) diminution in the uniqueness and individuality of the mark." Hasbro, Inc. v. Clue Computing, Inc., 66 F. Supp. 2d 117, 137 (D. Mass. 1999) (internal quotations omitted).

Although Boston Carriage did not have a valid registration at the time of the alleged

conduct, Boston Carriage has stated a plausible claim that the service mark was distinctive as to protect against dilution as a mark "valid at common law." See Section III(A)(2), (4). Boston Carriage has also sufficiently pleaded that the use of the mark by Boston Suburban created a likelihood of dilution. See Section III(A)(2)(a); see also Hasbro, 66 F. Supp. 2d at 137 (explaining how courts "have looked at factors such as the similarity of the marks and products, the renown of the marks, intent, and the relevant consumers" when determining dilution). Thus, Boston Suburban's Motion to Dismiss [Doc. No. 40] is DENIED as to Count VI.

      6.   Unfair Competition under Massachusetts Common Law (Count VII)

Boston Carriage alleges that Boston Suburban's use of Boston Carriage's trade name was done in an attempt to deceive the public based on the secondary meaning of the name. Am. Compl. ¶¶ 210-13 [Doc. No. 38]. Boston Suburban argues that any unfair competition claim premised on defective allegations of trademark infringement must also fail. "It is settled in Massachusetts that the gravamen of an unfair competition claim is the likelihood of consumer confusion as to the source of the goods or services." Open Software Found., Inc. v. U.S. Fid. & Guar. Co., 307 F.3d 11, 17 (1st Cir. 2002) (internal citations and quotations omitted). In other words, "[u]nfair competition, in its common law signification, implies palming off." Smartfoods, Inc. v. Northbrook Prop. & Cas. Co., 35 Mass. App. Ct. 239, 244, 618 N.E.2d 1365, 1368 (1993). Here, the court has already determined that Boston Carriage has plausibly pleaded a claim for trademark infringement under both federal and state law and the likelihood of consumer confusion based on that alleged infringement. See Sections III(A)(2), (4). Thus, Boston Suburban's Motion to Dismiss [Doc. No. 40] is DENIED as to Count VII.

7.   Unfair Competition and Deceptive Trade Practices under M.G.L. c. 93A §§ 2
and 11 (Count VIII)

Boston Carriage alleges that Boston Suburban's wrongful actions regarding the use of

Boston Carriage's mark and service name caused a significant loss of business. Am. Compl.

¶¶ 219-23 [Doc. No. 38]. Boston Suburban contends that any Section 93A claim premised on a

"defective" allegation of trademark infringement must fail as well. The court has already ruled

on the plausibility of Boston Carriage's trademark claims. See Section III(A)(2), (4); see

CrossFit, Inc. v. Mustapha, 2015 WL 12724069, at *10 (D. Mass. Nov. 16, 2015) (finding a

viable 93A claim where the plaintiff had already successfully pleaded a Lanham Act claim

because "[a]s with the Lanham Act, the essential element to prove unfair or deceptive acts or

practices under Chapter 93A is that defendant's use of a mark caused confusion among

consumers as to the source of the plaintiff's product.") (internal quotations and citation omitted);

see also Bos. Cab Dispatch, Inc. v. Uber Techs., Inc., 2014 WL 1338148, at *6 (D. Mass. Mar.

27, 2014) (dismissing a 93A claim where a Lanham Act claim was also subject to dismissal for a

lack of explicit allegations of misrepresentation). Here, Boston Carriage has plausibly pleaded a

Lanham Act claim, allegations of which rise to the heightened pleading standard of "rascality."

See Ferring Pharms. Inc. v. Braintree Lab'ys, Inc., 38 F. Supp. 3d 169, 185 (D. Mass. 2014).

Thus, Boston Suburban's Motion to Dismiss [Doc. No. 40] is DENIED as to Count VIII.

8.   Interference with Advantageous Business Relations (Count IX)

Boston Carriages alleges that Boston Suburban's "scheme" interfered with the goodwill

and reputation of Boston Carriage's business. Am. Compl. ¶¶ 229-34 [Doc. No. 38]. Boston

Suburban contends that any claims based on defective trademark infringement claims cannot

proceed, and regardless, Boston Carriage did not specifically allege the business relationship in

which Boston Suburban allegedly interfered. Mem. 10 [Doc. No. 41]. The court has already

addressed the sufficiency of Boston Carriage's trademark infringement claim, so it only addresses the business relationship issue.

"There are four elements required to establish interference with advantageous business relations: (1) [plaintiffs] had a business relationship for economic benefit with a third party, (2) the [defendants] knew of that relationship, (3) the [defendants] interfered with the relationship through improper motive or means, and (4) the [plaintiff's] loss of the advantage resulted directly from the defendants' conduct." Guest-Tek Interactive Entm't Inc. v. Pullen, 731 F. Supp. 2d 80, 86 (D. Mass. 2010) (citing Fafard Real Est. & Dev. Corp. v. Metro–Boston Broadcasting, Inc., 345 F.Supp.2d 147, 154 (D. Mass. 2004)). "To sustain a claim of intentional interference with business relations, 'more than just intentional interference must be established,' it requires that a defendant's conduct was wrongful or improper in some way." Id. (quoting United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 551 N.E.2d 20, 23 (1990)).

General allegations regarding general competition for prospective customers in a shared market are insufficient to satisfy the business relationship element. Katin v. Nat'l Real Est. Info. Servs., Inc., 2009 WL 929554, at *8 (D. Mass. Mar. 31, 2009). For example, the court held there was no advantageous business relationship where a plaintiff had distributed flyers and received "numerous" inquiries about its products. Laser Labs, Inc. v. ETL Testing Laboratories, Inc., 29 F.Supp.2d 21, 23-24 (D. Mass. 1998). Conversely, a court found an advantageous business relationship where "the alleged interference was with a single anticipated transaction involving a specific piece of real property." Katin, 2009 WL 929554, at *9 (discussing Farfard, 345 F.Supp.2d at 154). However, a successful claim may allege "[a] probable future business relationship anticipating a reasonable expectancy of financial benefit." Am. Private Line Servs., Inc. v. Eastern Microwave, Inc., 980 F.2d 33, 36 (1st Cir. 1992).

Here, Boston Carriage has alleged that at least one customer was diverted to Boston Suburban's website. Am. Compl. ¶ 61 [Doc. No. 38]. However, that client did not end up making a reservation with Boston Suburban, rather calling in her order to Boston Carriage. Id. Boston Carriage also alleges that following the creation of Boston Suburban's similarly named website, it experienced an "inexplicable" loss in sale volumes. Id. at ¶ 57. But these allegations only support a plausible interference with Boston Carriage's efforts to compete in the market for limousine services. Boston Carriage has not sufficiently pled that it had a "reasonable expectancy" of future business which was interfered with by Boston Suburban, nor did Boston Carriage allege that its customers were breaking reservations to go to Boston Suburban. C.f. Am. Priv. Line Servs., Inc., 980 F.2d at 36 (finding an advantageous business relationship where the parties were in negotiations in anticipation of a future purchase and sale agreement). Thus, Boston Suburban's Motion to Dismiss [Doc. No. 40] is GRANTED as to Count IX.

### 9.   Conversion (Count X)

Boston Carriage alleges that it had legal ownership and legal right of immediate possession to the original content on its website, and that Boston Suburban's willful reproduction of that content caused economic harm and reputational damage. Am. Compl. ¶¶ 237-41 [Doc. No. 38]. Boston Suburban contends that any claim of conversion is preempted by the Copyright Act, and conversion is not a remedy for the theft of intangibles under Massachusetts law. Mem. 4-5 [Doc. No. 41].

"A cause of action is preempted under the Copyright Act, 17 U.S.C. § 301(a), if it does not require an element beyond mere copying, preparation of derivative works, performance, distribution or display." Santa-Rosa v. Combo Recs., 471 F.3d 224, 226 (1st Cir. 2006) (internal quotation omitted); 17 U.S.C. § 301(a). ("[A]ll legal or equitable rights that are equivalent to any

of the exclusive rights within the general scope of copyright ... are governed exclusively by this title."). "When considering whether the right provided by a state-law claim is equivalent to that provided by the Copyright Act, courts focus on what plaintiff seeks to protect. If the plaintiff's state-law claim seeks to protect a matter within the scope of copyright law, the claim is preempted." Henry v. Nat'l Geographic Soc'y, NGE, Inc., 147 F.Supp.2d 16, 20–21 (D. Mass. 2001) (internal citations and quotations omitted). "The test to determine whether a cause of action includes an extra element that changes the nature of the action to make it qualitatively different from a copyright infringement claim is functional and fact-specific." Real View, LLC v. 20-20 Techs., Inc., 789 F. Supp. 2d 268, 273 (D. Mass. 2011). "That extra element must be qualitatively different from the rights protected by copyright law." Tingley Systems, Inc. v. CSC Consulting, Inc., 152 F.Supp.2d 95, 105 (D. Mass. 2001).

Boston Carriage alleges that Boston Suburban copied both Boston Carriage's original content and Boston Carriage's clients' original content. Am. Compl. ¶ 237 [Doc. No. 38]. To the extent that Boston Carriage's conversion claim is based on the reproduction of original content on Boston Carriage's website, it is preempted. See Soft-Aid, Inc. v. Sam-on-Demand, 2016 WL 10919656, at *11-12 (D. Mass. Aug. 11, 2016) (finding various state law claims preempted where the claims were based on the same conduct as the copyright claim); Henry, 147 F. Supp. 2d at 21; Jalbert v. Grautski, 554 F. Supp. 2d 57, 75 (D. Mass. 2008) (finding preemption where the alleged conversion "consists entirely of defendants' alleged distribution of the print without authorization and without payment…which is equivalent (if not identical) to the right protected by the Copyright Act.").

Boston Carriage's conversion claim also includes Boston Suburban's alleged reproduction of client testimonials from the Boston Carriage website, which are explicitly

excluded from Boston Carriage's copyright registration. See Am. Compl. Ex. 2 [Doc. No. 38-2].

Boston Carriage argues that it has legal right of immediate possession to the original content

posted to its website by its customers through a non-exclusive license. Am. Compl. ¶ 238 [Doc.

No. 38]; See Pl.'s Opp'n. 5-6 [Doc. No. 45]. "The tort of conversion requires an intentional or

wrongful exercise of dominion or control over personal property of another by one with no right

to immediate possession." Kelley v. LaForce, 288 F.3d 1, 11 (1st Cir. 2002) (citing Third Nat'l

Bank v. Continental Ins. Co., 388 Mass. 240, 446 N.E.2d 380, 383 (Mass. 1983)). A licensee,

standing alone, cannot bring a suit for copyright infringement. Widenski v. Shapiro, Bernstein &

Co., 147 F.2d 909, 910-11 (1st Cir. 1945). This is because a licensee maintains only a right to

use, not a right of possession. See Waterman v. Mackenzie, 138 U.S. 252, 255 (1891)

(explaining how title remains with the patent owner when a transfer amounts to a license); see

also Est. of Hevia v. Portrio Corp., 602 F.3d 34, 41 (1st Cir. 2010) (holding that an "implied

license is…of limited scope; it simply permits the use of a copyrighted work in a particular

manner.") (internal citation and quotations omitted). Because Boston Carriage alleges it holds

only a non-exclusive license to the client testimonials, it may not alone bring a claim of

conversion, which requires a right of possession.[2] Thus, Boston Suburban's Motion to Dismiss

[Doc. No 40] is GRANTED as to Count X.

          10. Unjust Enrichment (Count XII)

Boston Suburban moves to dismiss the entire Amended Complaint [Doc. No. 38] but offers

no separate argument as to Count XII, the unjust enrichment claim. In the absence of any

argument, Boston Suburban's Motion to Dismiss [Doc. No.40] is DENIED as to Count XII.

---

[2] The court does not reach the question of whether intangible property can be the basis for a
conversion claim.

B. *The Individual Defendants*

Boston Carriage claims that the Individual Defendants are personally liable for the state and federal law violations set forth above. Am. Compl. ¶ 1 [Doc. No. 38]. Defendants contend that Boston Carriage has not sufficiently pleaded facts to hold the corporate officers liable or to pierce the corporate veil. Mem. 10-14 [Doc. No. 41].

1. Individual Liability of Ms. Kraynitskaya and Ms. Brezhneva as Corporate Officers

In Massachusetts, it is well settled that "a corporate officer who commits a tort is personally liable for his actions and cannot seek refuge in the fact that he was acting for the corporation." Bond Leather Co. v. Q.T. Shoe Mfg. Co., 764 F.2d 928, 938 (1st Cir. 1985). "A corporate officer is personally liable for a tort committed by the corporation that employs him, if he personally participated in the tort by, for example, directing, controlling, approving, or ratifying the act that injured the aggrieved party." Conning v. Halpern, 2020 WL 5803188, at *4 (D. Mass. Sept. 29, 2020) (quoting Townsends, Inc. v. Beaupre, 716 N.E.2d 160, 751 (Mass. App. Ct. 1999)).

Boston Carriage alleges that Ms. Kraynitskaya and Ms. Brezhneva are the sole officers and directors of Boston Suburban; they merely acted as figureheads for the business; they never contacted Boston Carriage with regards to the business operations; and they "rubber-stamped" any decisions made on behalf of the company by their husbands. Am. Compl. ¶¶ 4-6, 51-52 [Doc. No. 38]. The allegations are insufficient to show Ms. Kraynitskaya's or Ms. Brezhneva's "personal participation" in the wrongdoing alleged in the Counts discussed above.

2. Piercing the Corporate Veil

Boston Carriage alleges that Boston Suburban is controlled and managed by the officers' husbands, Mr. Kraynitsky and Mr. Popovich. Id. at ¶¶ 7-11, 39. "Under Massachusetts common

24

law, disregarding the corporate form is permissible only in rare situations." United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1091 (1st Cir. 1992). Massachusetts courts consider the following factors to determine whether to pierce the corporate veil: "(1) common ownership; (2) pervasive control; (3) confused intermingling of business assets; (4) thin capitalization; (5) nonobservance of corporate formalities; (6) absence of corporate records; (7) no payment of dividends; (8) insolvency at the time of the litigated transaction; (9) siphoning away of corporation's funds by dominant shareholder; (10) nonfunctioning of officers and directors; (11) use of the corporation for transactions of the dominant shareholders; and (12) use of the corporation in promoting fraud." Malden Transportation, Inc., 286 F. Supp. 3d at 271–72 (quoting Attorney Gen. v. M.C.K., Inc., 432 Mass. 546, 555 n. 19, 736 N.E.2d 373 (2000)).

"A federal court, in deciding what veil-piercing test to apply, should 'look closely at the purpose of the federal statute to determine whether the statute places importance on the corporate form, an inquiry that usually gives less respect to the corporate form than does the strict common law alter ego doctrine.'" United Elec., 960 F.2d at 1080 (quoting Town of Brookline v. Gorsuch, 667 F.2d 215, 221 (1st Cir. 1981)). There is no set standard for veil-piercing under federal common law. Crane v. Green & Freedman Baking Co., 134 F.3d 17, 21 (1st Cir. 1998) (finding that the federal common law standard "for when it is proper to pierce the corporate veil is notably imprecise and fact-intensive."). "Instead, the rule in federal cases is founded only on the broad principle that 'a corporate entity may be disregarded in the interests of public convenience, fairness and equity.'" Bhd. of Locomotive Engineers v. Springfield Terminal Ry. Co., 210 F.3d 18, 26 (1st Cir. 2000) (quoting Town of Brookline, 667 F.2d at 221)). Although this circuit has not specifically set a standard to analyze alter ego liability in either federal trademark or

copyright infringement cases, a party attempting to pierce the corporate veil, in general, must prove "lack of corporate independence,[3] fraudulent intent, and manifest injustice." United Elec., 960 F.2d at 1080.

Boston Carriage alleges that Mr. Kraynitsky shares the Ashland, Massachusetts address with Ms. Kraynitskaya and Mr. Popovich resides, together with Ms. Brezhneya, in the same residential complex as Mr. Kraynitsky and Ms. Kraynitskaya. Am. Compl. ¶¶ 10-11 [Doc. No. 38]. Boston Carriage contends that although Mr. Kraynitsky and Mr. Popovich are not officers of Boston Suburban, they regularly communicated with Boston Carriage regarding the business operations of the company. Id. at ¶¶ 42-43. In one such call in or about 2017, Mr. Kraynitsky stated that Mr. Popovich "will be managing our online advertising and promotion himself." Id. at ¶ 48. Mr. Kraynitsky allegedly told Boston Carriage that Boston Suburban did not keep money in the business account, rather emptying and splitting the funds between Mr. Kraynitsky and Mr. Popovich. Id. at ¶ 54. Boston Suburban's domain name "logan-car-service.com" listed Mr. Popovich as the registrant, administrative contact, and technical contact. Id. at ¶ 63. In a call on or around April 30, 2018, Mr. Kraynitsky admitted to plaintiffs that the domain name and website was created by Mr. Kraynitsky and Mr. Popovich, stating that they had hired a third-party web designer and they were unaware of the allegedly copied content. Id. at ¶ 100. Boston Carriage alleges that Mr. Kraynitsky had been actively promoting the website on social media.

---

[3] In reviewing corporate independence, courts look at "(1) whether a corporation is operated as a separate entity; (2) commingling of funds and other assets; (3) failure to maintain adequate records or minutes; (4) the nature of the corporation's ownership and control; (5) absence of corporate assets and undercapitalization; (6) use of a corporation as a mere shell, instrumentality or conduit of an individual or another corporation; (7) disregard of legal formalities and the failure to maintain an arms-length relationship among related entities; and (8) diversion of the corporation's funds or assets to noncorporate uses." InterGen N.V. v. Grina, 344 F.3d 134, 149 (1st Cir. 2003) (internal citation omitted).

Id. at ¶ 101.

Boston Carriage alleges that Mr. Kraynitsky and Mr. Popovich "exercised operational control and management of Boston Suburban." Id. at ¶ 162. As alleged, Mr. Kraynitsky and Mr. Popovich have control over the business relations of Boston Suburban without clear corporate structure, organizational boundaries, or oversight by the officers of record. See Zimmerman v. Puccio, 613 F.3d 60, 74-76 (1st Cir. 2010) (affirming summary judgment on the issue of alter ego). Mr. Kraynitsky and Mr. Popovich allegedly stated that they did not keep funds in the corporate account, rather immediately transferring the funds to themselves. Further, Boston Carriage has sufficiently pleaded that Mr. Kraynitsky and Mr. Popovich operated with fraudulent intent, as discussed below. Although Boston Carriage has not alleged facts pointing to every factor, they have plausibly pled that Mr. Kraynitsky and Mr. Popovich used Boston Suburban as their alter ego. Id. at 74 n.17 (holding that the list of factors "is not exhaustive, nor does every factor have to be present in every veil piercing case."); C.f., Malden Transportation, Inc., 286 F. Supp. 3d at 272 (granting a motion to dismiss where the "complaint does not allege facts in support of a single factor relevant to piercing the corporate veil.").

Thus, Defendants' Motion to Dismiss [Doc. No 40] regarding the Individual Defendants as to the above-discussed claims is GRANTED as to Ms. Kraynitskaya and Ms. Brezhneva and DENIED as to Mr. Kraynitsky and Mr. Popovich.

## C.  Civil Conspiracy (Count XI)

Boston Carriage alleges that since approximately December 2017, Boston Suburban and the Individual Defendants have "devised and executed a common plan" to fraudulently market and sell Boston Suburban's limousine services to the public online. Am. Compl. ¶ 244 [Doc. No. 38]. Boston Carriage claims that Defendants committed "a variety of tortious and criminal acts

under federal and state law" to further their plan, including copying original content from Boston Carriage's website, refusing to take the website down even after saying they would do so, and intentionally confusing customers into thinking they were actually signing up for Boston Carriage's services. Id. Defendants contend that Boston Carriage has not sufficiently pleded a fraudulent act nor common design or agreement to commit fraud. Mem. 18-19 [Doc. No. 41].

Massachusetts recognizes two types of civil conspiracy—one based on coercion, and one based on tort. See Taylor v. Am. Chemistry Council, 576 F.3d 16, 34 (1st Cir. 2009). Here, Boston Carriage's claim is based on tort. "In Massachusetts, a civil conspiracy requires (1) 'a common design or an agreement. . .between two or more persons to do a wrongful act' and (2) 'proof of some tortious act in furtherance of the agreement.'" Bassett v. Jensen, 459 F. Supp. 3d 293, 312 (D. Mass. 2020) (citing Aetna Cas. Sur. Co. v. P & B Autobody, 43 F.3d 1546, 1564 (1st Cir. 1994)). "To establish civil conspiracy, a plaintiff must provide evidence that the defendants agreed together to commit an underlying tort." Id. (internal quotations omitted).

Any claim of civil conspiracy between Boston Suburban and its officers is moot because "an entity cannot conspire with itself." Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 131 (1st Cir. 2006). However, Boston Carriage also claims that Mr. Kraynitsky and Mr. Popovich conspired with Boston Suburban and its officers (Defendants Ms. Kraynitskaya and Ms. Brezhneva) in the plan to market services under the Logan Car Service name. According to the Amended Complaint [Doc. No. 38], while Mr. Kraynitsky and Mr. Popovich worked together to create the "copycat" website and market Boston Suburban's services using the mark, as discussed above, at minimum, Mr. Kraynitsky and Mr. Popovich had knowledge that they were operating Boston Suburban's services under the name "Logan Car Service" and using the domain logan-car-service.com." Am. Compl. ¶¶ 63, 100-02 [Doc. No. 38]; See Kurker v. Hill, 44

Mass. App. Ct. 184, 189, 689 N.E.2d 833 (1998) ("Key to this cause of action is a defendant's substantial assistance [to another], with the knowledge that such assistance is contributing to a common tortious plan."). For example, Mr. Kraynitsky told Boston Carriage that Mr. Popovich "will be managing our online advertising and promotion himself." Am. Compl. ¶ 48 [Doc. No. 38]. As discussed above, Boston Carriage has also sufficiently pleaded various tortious acts made in furtherance of the alleged conspiracy. See Sections III(A)(8)-(10).

Boston Carriage alleges further that Ms. Kraynitskaya and Ms. Brezhneva rubber-stamped their husbands' actions on behalf of the company. Am. Compl. ¶¶ 39, 51 [Doc. No. 38]. Rubber-stamping those actions was presumably necessary to allow their husbands to act on behalf of the corporation despite not being officers and may amount to "substantial assistance or encouragement." Grant v. John Hancock Mut. Life Ins. Co., 183 F. Supp. 2d 344, 363 (D. Mass. 2002). Notably, "[c]ourts in this district have applied a low bar for allegations of 'substantial assistance' sufficient to survive a motion to dismiss." Brennan v. Ferreira, 251 F. Supp. 3d 338, 343 (D. Mass. 2017).

Thus, Defendants' Motion to Dismiss [Doc. No 40] is DENIED as to Count XI.

   D. *Violation of Racketeer Influenced and Corrupt Organizations Act – Against Individual Defendants (Count IV)*

Boston Carriage alleges that Defendants created a scheme to defraud the public by using Boston Carriage's trade name to divert funds to themselves, thereby violating RICO. Am. Compl. ¶ 163 [Doc. No. 38]. Defendants argue that Boston Carriage fails to plausibly allege the predicate offenses of wire fraud and criminal copyright, and that those acts are related in such a way to plausibly plead a continued threat of criminal activity. Mem. 14-18 [Doc. No. 41].

RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or

29

participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To plead a violation of section 1962(c), plaintiffs must plausibly allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985) (footnote omitted).

     1.  Enterprise

RICO applies to both legitimate and illegitimate enterprises involved in interstate commerce. United States v. Turkette, 452 U.S. 576, 580-82, 591 (1981); see also 18 U.S.C. § 1961(4). Although an enterprise is defined broadly, see Boyle v. United States, 556 U.S. 938, 944-45 (2009), the existence of an enterprise is its own element which must be proven separately, Turkette, 452 U.S. at 583. The element may be proven under a theory of legal enterprise, which "encompasses organizations such as corporations and partnerships, and other legal entities," Turkette, 452 U.S. at 581 (internal quotations omitted), or of association-in-fact enterprise, which "covers any union or group of individuals associated in fact although not a legal entity," id. at 582 (internal quotations omitted).

Here, Boston Carriage has alleged that Boston Suburban itself, and not the Individual Defendants, is an enterprise under 18 U.S.C. § 1961(4). Am. Compl. ¶ 160 [Doc. No. 38]. Reading the facts most favorably to Boston Carriage, Boston Carriage has sufficiently pleaded that Boston Suburban is a legal enterprise engaged in interstate commerce for purposes of RICO.

     2.  Conduct

A single entity cannot be both an enterprise and person for purposes of RICO. Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001) ("We do not quarrel with the basic principle that to establish liability under § 1962(c) one must allege and prove the existence of

two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name."). However, where a corporate owner or employee as a natural person is distinct from the corporation itself, courts will find that separateness requirement met, at least under a legal entity theory. Id. at 163-65 ("A corporate employee who conducts the corporation's affairs through an unlawful RICO 'pattern. . .of activity,' § 1962(c), uses that corporation as a 'vehicle' whether he is, or is not, its sole owner.").

"To conduct or participate, directly or indirectly, in the affairs of an enterprise requires a showing that a defendant took "*some* part in directing the enterprise's affairs." In re Lupron Mktg. & Sales Pracs. Litig., 295 F. Supp. 2d 148, 164 (D. Mass. 2003) (emphasis in original) (quoting Reves v. Ernst & Young, 507 U.S. 170, 179 (1993)). "A RICO-conspiracy defendant…need not have personally committed — or even agreed to personally commit — the predicates." United States v. Rodriguez-Torres, 939 F.3d 16, 29 (1st Cir. 2019).

Here, Ms. Kraynitskaya and Ms. Brezhneva are officers of the enterprise Boston Suburban. Am. Compl. ¶ 161 [Doc. No. 38]. However, Boston Carriage alleges that the Individual Defendants, including Ms. Kraynitskaya and Ms. Brezhneva, conducted Boston Suburban's affairs in a RICO-prohibited way, including through registering a similarly named domain, using Boston Carriage's trade name in advertising, and interacting with customers using Boston Carriage's trade name. Id. at ¶¶ 164-68. In addition, there is no allegation that Mr. Kraynitsky or Mr. Popovich were one and the same with, or even employees of, the enterprise. Rather, Boston Carriage only alleges that Mr. Kraynitsky or Mr. Popovich "exercised operational control and management of Boston Suburban." Id. at ¶ 162. As alleged, Mr. Kraynitsky and Mr. Popovich are distinct persons from the enterprise, and thus open to liability under RICO. While the parties may contest both the type of enterprise and the conduct therein at a later stage, Boston

Carriage has sufficiently pleaded RICO-prohibited conduct of the Individual Defendants as persons.

3.   Racketeering Activity

"Racketeering activity 'encompass[es] dozens of state and federal offenses, known in RICO parlance as predicates.'" AngioDynamics, Inc. v. Clarion Med. Techs., 2019 WL 10787926, at *13 (D. Mass. Sept. 25, 2019) (quoting RJR Nabisco, Inc. v. European Cmty., 579 U.S. 325, 329-30 (2016)). Boston Carriage alleges two predicate acts: wire fraud and criminal copyright infringement.

a.   Wire Fraud Under 18 U.S.C. § 1343

To allege a predicate act of mail or wire fraud under 18 U.S.C. § 1343, a plaintiff must show "(1) a scheme to defraud or obtain money or property by means of false or fraudulent pretenses; (2) the defendant's knowing and willful participation in this scheme with the intent to defraud, or to obtain money or property by means of false or fraudulent pretenses; and (3) the use of the U.S. mail in furtherance of this scheme." Natale v. Espy Corp., 2 F. Supp. 3d 93, 100 (D. Mass. 2014); see McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc., 904 F.2d 786, 790 (1st Cir. 1990) (noting that predicate act could be use of "United States mails and/or the interstate wires in furtherance of the scheme"). Unlisted predicate acts, including "rehash[ed]" copyright infringement and trademark claims, do not suffice to bring a RICO claim. See Greenspan v. Random House, Inc., 2012 WL 13055954, at *2 n.5 (D. Mass. May 9, 2012), aff'd sub nom. Greenspan v. Random House, Inc., 2012 WL 5188792 (1st Cir. Oct. 16, 2012).

While many of Boston Carriage's wire fraud allegations are similar to the copyright and trademark infringement claims, see Am. Compl. ¶ 164 [Doc. No 38]; Sections III(A)(1)-(5), Boston Carriage also alleges that Individual Defendants used the "copycat" website to allow

potential customers to directly make reservations for what they thought was Boston Carriage,
Am. Compl. ¶ 168 [Doc. No. 38]. Further, after customers purchased Boston Suburban's services
online, Boston Suburban would reply online stating "Thank you for traveling with Logan Car
Service!" Id. at ¶ 170; Am. Compl. Ex. 10 [Doc. No. 38-10]. The use of the online reservation
system using Boston Carriage's d/b/a name is sufficient to plausibly infer that Boston Suburban
attempted to deceive customers into thinking they were using Boston Carriage in order to divert
business to themselves. See McEvoy Travel Bureau, 904 F.2d at 791 (holding that the "scheme
must be intended to deceive another, by means of false or fraudulent pretenses, representations,
promises, or other deceptive conduct").

 Boston Carriage has also sufficiently pleaded the predicate act of wire fraud under RICO
with particularity. RICO claims are subject to a heightened pleading standard. Ahmed v.
Rosenblatt, 118 F.3d 886, 889 (1st Cir. 1997) ("[It is] well settled law in this circuit that RICO
pleadings of mail and wire fraud must satisfy the particularity requirements of Rule 9(b)…"). To
meet that standard, a plaintiff must allege the "who, what, where, and when of the allegedly false
or fraudulent representation." Rodi v. S. New England Sch. Of L., 389 F.3d 5, 15 (1st Cir. 2004)
(internal quotations omitted). However, "[t]he other elements of fraud, such as intent and
knowledge, may be averred in general terms." Id.

 Boston Carriage has alleged that Individual Defendants used the internet site "logan-car-
service.com" to transmit information to potential customers beginning in December 2017 that
allowed customers to book travel, including interstate travel, on Boston Suburban's website
using Boston Carriage's trade name. Am. Compl. ¶¶ 163-64 [Doc. No. 38]. Further, the "owner"
of Boston Suburban's website would respond to customer reviews using the Boston Carriage
trade name. Am. Compl. Ex. 10 [Doc. No. 38-10]. Although Boston Carriage has not pled

exactly which Individual Defendant committed each act, it has "provided an outline of the general scheme to defraud and established an inference that the mail or wires was used to transact this scheme." New England Data Servs., Inc. v. Becher, 829 F.2d 286, 291 (1st Cir. 1987) ("[T]he burden on the plaintiff to know exactly when the defendants called each other or corresponded with each other, and the contents thereof, is not realistic…requiring plaintiff to plead the time, place and contents of communications between the defendants, without allowing some discovery, in addition to interrogatories, seems unreasonable."); C.f., Britton v. Marcus, Errico, Emmer & Brooks, PC., 2020 WL 7204545 (D. Mass. Nov. 30, 2020) (dismissing RICO claims where plaintiffs only alleged "at worst, sloppy billing practices"). While the degree of scienter remains a question of fact, Boston Carriage has sufficiently pleaded that the Individual Defendants, through its web activity, intended to deceive customers into believing that Boston Suburban was Boston Carriage in order to gain business through the use of Boston Carriage's trade name in 2018 Google Reviews and telephone calls. See Am. Compl. ¶¶ 170-72 [Doc. No. 38].

### b. *Criminal Copyright Infringement under 18 U.S.C. § 506(a)*

Boston Carriage also alleges that Individual Defendants engaged in the predicate act of criminal copyright infringement, which, in pertinent part, criminalizes "any person who willfully infringes a copyright…. if the infringement was committed…for purposes of commercial advantage or private financial gain." 17 U.S.C. § 506(a); see also ICONICS, Inc. v. Massaro, 192 F. Supp. 3d 254, 269 (D. Mass. 2016) (finding copyright infringement as a viable predicate act under RICO). Individual Defendants argue that Boston Carriage has not plausibly alleged that the Individual Defendants knew they were acting illegally. Conway v. Licata, 62 F. Supp. 3d 169, 174 (D. Mass. 2014) (holding that "no evidence to support the inference that defendants had

knowledge that their conduct was unlawfully infringing on the plaintiffs' copyrights… is fatal to a claim of criminal copyright infringement."). The issue is very close. Boston Carriage has alleged that it placed a copyright notice on the home page of its website since 2016, that the parties were in communication such that Boston Suburban likely knew that Boston Carriage operated under its trade name, and that Mr. Kraynitsky "tried to apologize" after Boston Carriage sent Boston Suburban a cease-and-desist letter, only to continue engaging in the infringing conduct. Am. Compl. ¶¶ 26, 49, 100, 111 [Doc. No. 38]. But Boston Carriage did not have a valid copyright registration until September 14, 2021, and the Individual Defendants may well establish that they had a good-faith basis to believe that they had the right to use Boston Carriage's work. See Am. Compl. Ex. 2 [Doc. No. 38-2]. The court need not resolve this issue where, as set forth below, the allegations are insufficient to establish the final element of a RICO claim.

### 4.  Pattern of Racketeering Activity

Individual Defendants argue that Boston Carriage has not sufficiently pleaded a pattern of racketeering activity. "For there to be a pattern, a plaintiff must demonstrate not only the existence of two or more predicate acts, but also that they are related and pose at least a threat of continued criminal activity." Feinstein v. Resolution Trust Corp., 942 F.2d 34, 44 (1st Cir. 1991); United States v. Rodriguez-Torres, 939 F.3d 16, 29 (1st Cir. 2019). Here, Boston Carriage sufficiently pleads at least two predicate acts of wire fraud and may have sufficiently alleged criminal copyright infringement. Acts are related if they have "same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 230 (1989) (internal quotations omitted). As alleged, the participants (the Individual Defendants), the

purpose (to increase business), and the methods of commission (using the trade names of other companies) are the same, and thus related. Am. Compl. ¶¶ 57-107, 182 [Doc. No. 38].

A plaintiff can either plead continuity by "proving a series of related predicates extending over a substantial period of time" (the "closed" approach) or by proving "past conduct that by its nature projects into the future with a threat of repetition" (the "open" approach). H.J. Inc., 492 U.S. at 230. Although they combine the open and closed continuity standards, Defendants argue that "Plaintiff fails to establish a closed-end continuity." Mem. 18 [Doc. No. 41]. In response, Boston Carriage only defends the plausibility of "an open-ended pattern of criminal activity." Pl's Opp'n. 19 [Doc. No. 45]. Because Boston Carriage does not address the sufficiency of any closed-ended continuity pattern, the court does not address it here.[4]

To establish a threat of continued activity under the open-ended approach, Defendants "must demonstrate that the predicate acts . . . were a regular way of conducting the ongoing businesses." Fleet Credit Corp. v. Sion, 893 F.2d 441, 448 (1st Cir. 1990). Boston Carriage alleges that in 2011, Individual Defendants registered a domain name similar to that of another limousine service, Boston Car Service, and rerouted customers to the "bostonsururbancoach.com" website. Am. Compl. ¶ 183-85 [Doc. No. 38]. In at least one post, Boston Suburban responded to a customer review as "Boston Car Services." Am. Compl. Ex. 11 [Doc. No. 38-11]. Although the Boston Car Service allegations present facts similar to those before the court now, Boston Carriage has not alleged that Boston Car Service had a valid

---

[4] Even so, Boston Carriage has not sufficiently pleaded a closed-ended pattern of criminal activity where it only alleges itself as the sole victim of Individual Defendants' actions. See Giuliano v. Fulton, 399 F.3d 381, 390 (1st Cir. 2005) (explaining how courts "have consistently declined to find continuity where the RICO claim concerns a single, narrow scheme targeting few victims").

copyright at the time of the Defendants' actions.

Boston Carriage also points to Boston Suburban's continued use of the "copycat" website after the April 30, 2018 cease-and-desist letter as evidence of a continued threat of criminal activity. However, Boston Carriage has not sufficiently pleaded that the Individual Defendants run the day-to-day business of Boston Suburban through the use of continued RICO-violating conduct. See Fleet Credit Corp., 893 F.2d at 448. Although Boston Suburban was incorporated in or about 2011, Boston Carriage alleges that the predicate acts began sometime around December 2017. See Am. Compl. ¶¶ 38, 63 [Doc. No. 38]. The court finds that Boston Carriage has not sufficiently pleaded that wire fraud, and potential criminal copyright infringement, were how the Individual Defendants regularly conducted the ongoing business of Boston Suburban where Boston Carriage alleges approximately two to three years of off-and-on fraudulent acts within a ten-year business period.

Further, although the Individual Defendants may have not ceased their conduct, Boston Carriage have not sufficiently alleged "that [the Individual Defendants] would 'seek to repeat their fraud in other ... similar business settings,' or that they would 'employ mail and wire fraud indefinitely' in their future" business operations. Giuliano v. Fulton, 399 F.3d 381, 391 (1st Cir. 2005) (quoting Efron v. Embassy Suites (Puerto Rico), Inc., 223 F.3d 12, 19 (1st Cir. 2000)). The case here is distinguishable from a paradigmatic example of RICO-violating conduct, a string of bank robberies across multiple states, where the Individual Defendants' effort here regarding the alleged wrongful use of Boston Carriage's mark through various acts does not present "a specific threat of repetition extending indefinitely into the future" at the core of RICO. H.J. Inc., 492 U.S. at 242; see Apparel Art Int'l, Inc. v. Jacobson, 967 F.2d 720, 723 (1st Cir. 1992).

In sum, the court finds that Boston Carriage has not sufficiently alleged a RICO violation. Thus, Boston Suburban's <u>Motion to Dismiss</u> [Doc. No. 40] is GRANTED as to Count IV.

### IV.      Conclusion

For the aforementioned reasons, Boston Suburban's <u>Motion to Dismiss</u> [Doc. No. 40] is GRANTED as to Count IV, IX and X, GRANTED IN PART as to Count V as to claims that alleged occurred before May 7, 2018, and GRANTED IN PART as to all claims against Ms. Kraynitskaya and Ms. Brezhneva except Count XI, and is otherwise DENIED.

IT IS SO ORDERED.

/s/ Indira Talwani
Date: September 30, 2022                        United States District Judge